**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 03:57 PM February 26, 2020**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| KATIE MARIE KOGLMAN, | ) | CASE NO. 18-60482 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

      This case is a prime example of the unfairness of the rigid application of the so-called "means test" to a debtor under 11 U.S.C. § 707(b)(2).

      Debtor and her husband were previously granted a dissolution of marriage. As part of a settlement agreement, Debtor's husband agreed to keep real property located at 10341 W. Old Lincoln Way, Wooster Ohio 44691 (the "Lincoln Way Property") and hold Debtor harmless on the mortgage. But Debtor's husband fell behind on the mortgage payments and eventually filed his own chapter 7 case. In re Chad R. Griffith, No. 17-61254 (Bankr. N.D. Ohio May 31, 2017). After her husband obtained a discharge, creditor Equity Trust Corporation garnished Debtor's wages for notes that her husband had signed by forging her name. Debtor's husband forged Debtor's signature on loans for various rental properties, and he admitted to the forgery in the Domestic Relations Division of the Wayne County Court of Common Pleas. (Debtor Hr'g Test., Dec. 16, 2019, 10:05 AM); see also Griffith v. Griffith, No. 15 DR 0186 (Wayne Cty. Dom. Rel. Ct. Mar. 20, 2018). As a result, the court invalidated the marriage dissolution due to his fraud and Debtor and her husband are still married. The primary reason Debtor filed this case was to stop the wage garnishment arising from a debt that she likely does not or should not owe.

The United States Trustee ("UST") filed a motion to dismiss this case for abuse pursuant to 11 U.S.C. § 707(b)(1)-(3) (the "Motion") on June 28, 2018. Debtor objected to the Motion on July 9, 2018. An evidentiary hearing was held on December 16, 2019, at which time Ronald Stanley, counsel for Debtor, and Tiiara Patton, counsel for the UST, attended. Debtor and Catherine Lowman ("Lowman") testified at the hearing. Lowman works as a bankruptcy auditor for the UST. The UST filed its amended post-hearing brief on January 9, 2020 and Debtor filed her post-hearing brief on January 31, 2020.

In rendering this decision, the court has considered the testimony of the witnesses and the exhibits admitted into evidence during the hearing. The court has also considered the joint stipulations filed by the parties before the hearing.

The court has subject matter jurisdiction under 28 U.S.C. § 1334 and the general order of reference entered in this district. This matter is a core proceeding and the court has authority to enter final orders. 28 U.S.C. § 157(b)(2)(A). Pursuant to 28 U.S.C. §§ 1408 and 1409, venue in this court is proper. This opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## I.  BACKGROUND

The following facts are derived from the joint stipulation of facts filed by the parties on October 24, 2019.

On March 13, 2018 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of the Bankruptcy Code. On the Petition Date, Debtor filed her Statement of Current Monthly Income, schedules, and statement of financial affairs (collectively, the "Schedules") and means test (the "Means Test"). Debtor's debts listed on her Schedules are primarily consumer debts. On May 29, 2018, Debtor filed amended Schedules I and J. On November 26, 2018, Debtor further amended her Schedules I and J. The UST filed a Statement of Presumed Abuse on May 29, 2018.

Debtor is employed as the executive director at United Way of Wayne and Holmes Counties, Inc. According to Debtor's pay advice dated September 4, 2019, Debtor's average gross monthly income is $6,822.06, and average monthly net income is $4,437.82. Debtor is on track to earn a gross annual income of $81,864.72. Debtor voluntarily contributes approximately $230.80/month to a TDA, which is a retirement savings plan offered through her employer. Debtor's employer reimburses her $150/month for transportation costs in addition to her monthly wages. In addition, in 2017 Debtor received a tax refund in the amount of $3,000. In 2018, Debtor received a tax refund in the amount of $3,526.

---

[1] Hereinafter, any reference to any section ("§" or "section") refers to a section in Title 11 of the United States Code (the "Bankruptcy Code"), and any reference to any "Rule" refers to a Federal Rule of Bankruptcy Procedure.

Debtor resides with Adam Olp at 484 Woodland Avenue, Wooster, Ohio 44691. Mr. Olp is employed and financially contributes to household expenses in connection with the home that he shares with Debtor. Debtor does not include Mr. Olp's income on either her Statement of Currently Monthly Income or her Schedules.

## II. LAW & ANALYSIS

Section 707(b) of the Bankruptcy Code provides in relevant part:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter . . . .
>
> (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,700, whichever is greater; or
> >
> > (II) $12,850.

§ 707(b)(1), (2). Section 707(b)(2) sets forth a formula for determining whether a case is presumed to be an abuse. If the presumption of abuse arises, the debtor has the burden of rebutting it by demonstrating "special circumstances," such as a serious medical condition or a call or order to active duty in the armed forces. § 707(b)(2)(B)(i). The so-called "means test" of § 707(b)(2) is "a strict mechanical test, designed to present a snapshot of the debtor's financial situation as of the date the bankruptcy case [is] commenced." In re Polinghorn, 436 B.R. 484, 488 (Bankr. N.D. Ohio 2010). The party moving to dismiss pursuant to § 707(b), here, the UST, bears the burden of proving abuse by a preponderance of the evidence. In re Weixel, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013) (citation omitted).

The UST contends that the presumption of abuse arises in this case. The UST's argument is based on its claim that Debtor understated her current monthly income and overstated several expenses on her Means Test.

First, the UST argues that Debtor's current monthly income is understated. At the hearing, Lowman's testimony showed that Debtor's gross wages on her Statement of Current Monthly Income should be increased from $5,944.44 to $6,499.99. Once this amount is increased, Debtor's annualized income increases to $77,999.88. Debtor appears to agree that her

3

income was understated. (Debtor's Br. 1, ECF No. 99.) At the same time, Debtor mentions that the paystubs in the UST's income calculation were subject to a wage garnishment. (Id.) However, for purposes of determining a debtor's current monthly income, the debtor's gross income – prior to any deductions or garnishments – is used. See § 101(10A); see also Official Form B 122A-1. Therefore, the court agrees with the UST's assessment of Debtor's current monthly income.

Second, the UST successfully argues that Line 13d of the Means Test must be reduced from $485 to $0. Debtor included this deduction for a 1997 Dodge Dakota that is not subject to a lien or ongoing monthly payment. Debtor argues that this deduction is permitted by Hildebrand v. Kimbro (In re Kimbro), 389 B.R. 518 (B.A.P. 6th Cir. 2008). However, that decision was reversed by the Sixth Circuit in Hildebrand v. Kimbro (In re Kimbro), 409 F. App'x 930 (6th Cir. 2011). The Sixth Circuit reversed the BAP because of the Supreme Court's decision in Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 72 (2011), which held that a debtor cannot claim an allowance for vehicle-ownership costs unless the debtor has expenses falling within that category. See e.g., In re Reynolds, No. 10-63787, 2011 Bankr. LEXIS 3235, at *6 (Bankr. N.D. Ohio Aug. 18, 2011).

Third, the UST argues that Line 17 of the Means Test should be reduced from $193.33 to $0. The UST claims that this deduction is limited to payroll deductions required by a debtor's job and does not include voluntary 401(k) contributions. Debtor, relying on In re Tucker, 389 B.R. 535 (Bankr. N.D. Ohio 2008), suggests that voluntary contributions to her retirement account are not necessarily impermissible when determining whether to dismiss for abuse. But Debtor's reliance on Tucker is misplaced. The holding in Tucker was limited to a determination as to whether the totality of the debtor's financial circumstances was considered an abuse under § 707(b)(3). Here, the issue is whether Debtor was permitted to deduct voluntary 401(k) contributions on her Means Test for purposes of determining whether to dismiss under § 707(b)(2). She was not. See, e.g., In re Whitaker, No. 06-33109, 2007 Bankr. LEXIS 2527, at *7, 15 (Bankr. N.D. Ohio July 25, 2007) (debtor's discretionary contributions to 401(k) plan account were not a requirement of debtor's job and therefore not proper deductions).

Next, the UST argues that Line 23 of the Means Test should be reduced from $185 to $50. This deduction is titled "optional telephones and telephone services." Debtors are instructed to deduct:

> The total monthly amount that you pay for telecommunication services for you and your dependents, such as pagers, call waiting, caller identification, special long distance, or business cell phone service, to the extent necessary for your health and welfare or that of your dependents or for the production of income, if it is not reimbursed by your employer. *Do not include payments for basic home telephone, internet and cell phone service*. Do not include self-employment expenses, such as those reported on line 5 of Official Form 122A-1, or any amount you previously deducted.

Official Form 122A-2 (emphasis added). Lowman testified that Debtor improperly claimed the

4

$185 deduction. Lowman's testimony was based upon her review of Debtor's Means Test and the additional documentation provided by Debtor. Lowman also explained that it is common for debtors to improperly deduct their entire cell phone expense on this line, and she argued that the amount should be reduced to $50.00 on the theory that Debtor might have had an additional line in a bundled cell phone plan reserved for use during business hours. Debtor did not present any evidence regarding the propriety of this deduction on her Means Test. The court agrees with the UST's assessment.

Finally, the UST contends that the monthly cure amount in Line 34 should be reduced from $104.40 to $0. Debtor included this amount in connection with the Lincoln Way Property. However, in her Statement of Intent, Debtor indicated she intended to surrender the Lincoln Way Property. On June 8, 2018, Farmers National Bank was granted relief from stay with respect to the Lincoln Way Property. The UST argues that Debtor cannot include this amount for property she intended to surrender. The court disagrees; the plain text of § 707(b)(2)(A)(iii)(I) "does not impose a limitation on the deduction for secured debt payments based on the debtor's Statement of Intention or on post-petition events, such as the surrender of collateral or the granting of relief from stay." In re Arndt, No. 17-30226, 2017 Bankr. LEXIS 3834, at *11 (Bankr. N.D. Ohio Nov. 6, 2017) (citation omitted). Thus, Debtor was permitted to include this amount on her Means Test.

Nevertheless, the presumption of abuse still arises. Debtor's current monthly income, as properly calculated by the UST, is $6,499.99. Debtor's total permissible deductions are $6,140.85. This leaves Debtor with $359.14 in monthly disposable income or $21,548.40 to fund a 60-month chapter 13 plan.

When the presumption of abuse arises, the debtor bears the burden of rebutting it by "demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." § 707(b)(2)(B)(i). The debtor is required to itemize each additional expense, provide documentation for such expense, and provide "a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." § 707(b)(2)(B)(ii). The debtor is also required to "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required." § 707(b)(2)(B)(iii). The presumption of abuse is only rebutted if the additional expenses or reduction in income brings the debtor's available income below the amount that would trigger the presumption. § 707(b)(2)(B)(iv).

Due to her husband's forgery, Debtor incurred attorney fees from her divorce attorney. Debtor estimates that she has paid less than $1,000 to her divorce attorney since March of 2018.[2] The domestic relations court revoked the dissolution of Debtor's marriage due to her husband's fraud. As a result, they are still married or were constructively re-married. In response, or perhaps in retaliation, Debtor's husband filed for divorce again *in a different county*. Debtor will need to retain a new divorce attorney because her husband filed in a county where her attorney

---

[2] Debtor testified that she paid her attorney a couple hundred dollars here and there, but she does not know when such payments were made.

does not practice.[3] Debtor's circumstances are unfortunate, and the court has no reason to doubt the veracity of her testimony at the hearing. However, Debtor has failed to demonstrate why her circumstances justify any additional expenses or adjustments to her current monthly income for which there are no reasonable alternatives. In addition, Debtor has failed to comply with the itemization, documentation, and explanation requirements of § 707(b)(2)(B)(ii). Accordingly, the court finds that Debtor has failed to rebut the presumption of abuse. Because dismissal is warranted under § 707(b)(2), the court need not determine whether to dismiss under § 707(b)(3)(B).[4]

Debtor has suffered the financial equivalent of being run over in a crosswalk and has arrived at the financial equivalent of the emergency room, the bankruptcy court. The law requires us to throw her back into traffic.

The court will enter a separate order in accordance with this opinion.

#    #    #

**Service List**:

Katie Marie Koglman
484 Woodland Ave
Wooster, OH 44691

Ronald R. Stanley
Ronald R. Stanley, Attorney at Law
3637 Medina Road #5
Medina, OH 44256

Tiiara N. A. Patton
United States Department of Justice
Office of the United States Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East, Suite 441
Cleveland, OH 44114

Lisa M. Barbacci, Trustee - Canton
PO Box 1299
Medina, OH 44258-1299

---

[3] It is not clear how much Debtor will need to pay her new attorney.
[4] This does not mean that Debtor would not be permitted to deduct potentially large sums for quite necessary domestic relations attorney fees in a chapter 13.

18-60482-rk    Doc 102    FILED 02/26/20    ENTERED 02/26/20 16:13:24    Page 6 of 6